UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEVE YAROSLASKI,

               Plaintiff,

v.

COWLITZ COUNTY, et al.,

               Defendants.

CASE NO. C14-5181 BHS

ORDER GRANTING IN PART,
RESERVING RULING IN PART,
AND SETTING HEARING ON
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

       This matter comes before the Court on Defendants Cowlitz County Humane

Society, Kevin Waldo, Mavis Rust, and Mike Nicholson's motion for summary judgment

(Dkt. 15) and Defendants Cowlitz County and Cory Robinson's motion for summary

judgment (Dkt. 16).  The Court has considered the pleadings filed in support of and in

opposition to the motions and the remainder of the file and hereby grants the motions in

part and reserves ruling in part for the reasons stated herein and sets a hearing for oral

argument on the remaining issues.

## I. PROCEDURAL HISTORY

       On March 3, 2014, Plaintiff Steve Yaroslaski ("Yaroslaski") filed a complaint

against Defendants Cowlitz County ("County"), Cowlitz County Humane Society

1 ("Humane Society"), Kevin Waldo, Mavis Rust, Mike Nicholson ("Humane Society

2 Officers"), and Cory Robinson ("Deputy Robinson") (collectively "Defendants").  Dkt. 1.

3 Yaroslaski asserts numerous causes of action under federal and state law.  *Id.*

4         On March 11, 2015, Defendants filed motions for summary judgment.  Dkts. 15,

5 16.  On April 1, 2015, Yaroslaski responded.  Dkt. 18.  On April 10, 2015, Defendants

6 replied.  Dkts. 20, 21.

7 **II. FACTUAL BACKGROUND**

8         The Humane Society has contracted with Cowlitz County to enforce and

9 administer the animal control laws of Washington State and the County in the

10 unincorporated areas of the County.  Dkt. 15-2, Declaration of Patrick Pearce ("Pearce

11 Dec."), Ex. A.  On March 1, 2011, the Humane Society received a complaint from an

12 individual who expressed concerns about the well-being of at least twenty dogs at

13 Yaroslaski's property that were caged outside in cold conditions.  *Id.*, Ex. J.  Humane

14 Society Officers Nicholson and Waldo responded to the complaint.  *Id.*

15         Upon approaching the house on the property, the officers observed three chain link

16 kennels on the left side of the house.  The officers contacted Yaroslaski, informed him

17 about the complaint, and asked to look around the property.  The parties dispute whether

18 Yaroslaski consented to a search of the property, but, for the purposes of this motion, the

19 Court will accept Yaroslaski's contention that he asked the officers if they had a warrant

20 to search the property.  Dkt. 19, Affidavit of Derek Smith ("Smith Aff."), Ex. 5,

21 Deposition of Steven Yaroslaski ("Yaroslaski Dep.") at 38 (deposition pagination).

22 Yaroslaski also contends that Officer Nicholson informed Yaroslaski that he didn't need

1   a warrant, and, based on that assertion, Yaroslaski allowed the officers to search the

2   property.  *Id.*

3          What is not in dispute is the condition of the kennels.  In his deposition,

4   Yaroslaski testified as follows:

5                  Basically I believe I said that the kennels were a mess.  We had
            snow on the ground, and the waterlines were frozen.  I explained why they
6          were a mess.  I said that I -- because of the weather, I haven't had a chance
            to get them cleaned out right and repaired.  I explained that the roof started
7          leaking with the snow.  We had a foot of snow.  And then the mud started
            coming down, and I explained that to them.
8                  They informed me that the kennels are in bad shape.
                    And I says, "I know that."
9
    *Id.* at 40.  On this issue, Officer Nicholson's report provides as follows:
10
                  During our walk through of Steven's property we counted 42 dogs
11         and puppies.  3 dogs were Stevens that he kept in his house as pets.
                  Livestock on the property cows, calves, chickens, and pigs had
12         adequate shelter, food, and all appeared healthy looking.
                  The remaining 39 dogs were kept in unsanitary conditions living in
13         mud and feces, along with unkept housing.

14   Pearce Dec., Ex. J.

15          At the conclusion of the walk through, the officers issued Yaroslaski a citation and

16   a warning.  Officer Nicholson's report provides as follows:

17                 At this time I explained to Steven that he would be cited for running
            a kennel operation as a breeder of 10 plus dogs without first obtaining a
18         permit per Cowlitz County Code, and that he was told to do so in 2008
            when officer McCuin visited his property, and that I would be back within
19         one month.

20   *Id.*  Yaroslaski testified that Officer Nicholson represented that the officers

21          would work with me and that I would have a month to get everything in
            order.  He said he'd be back within the month to double-check everything;
22

ORDER - 3

and that if everything was in order, that they'd work with us and we'd be
fine.

Yaroslaski Dep. at 40.

On March 2, 2011, Officer Nicholson reviewed the photographs he took at
Yaroslaski's property and reviewed relevant county codes and state statutes.  Officer
Nicholson concluded that Yaroslaski's dogs may have met the definition of "mistreated"
under the County Code.  Based on that conclusion, he determined that the animals should
be impounded and removed from the property.

On March 3, 2011, Officer Nicholson organized an impound operation.  Officer
Nicholson contacted the Cowlitz County Sheriff to ask for assistance in case Yaroslaski
acted violently during the impound.  Cowlitz County Sheriff's Deputy Robinson was
dispatched to accompany Humane Society Officers Nicholson, Waldo, and Rust.  The
officers went to the property and informed Yaroslaski that they were there to impound the
dogs.  Yaroslaski asked the officers if they needed a warrant and that Deputy Robinson
informed Yaroslaski that they didn't need a warrant because of the complaints.
Yaroslaski Dep. at 46.  The Humane Society officers impounded the dogs and transported
them to the Humane Society.  Before leaving the property, Officer Nicholson issued
Yaroslaski a report of impoundment which provided as follows:

> Your dogs have been impounded per [Cowlitz County Code
> ("CCC")] 6.12.220 section A. Animal control Authority found reason of
> any animal that is subject to any mistreatment described in CCC 6.12.060.
> And failure to register a kennel permit per CCC 6.12.150 and violating
> CCC 6.12.144, CCC 6.12.145, and CCC 6.12.146 specific condition to
> operate a kennel.

ORDER - 4

1          You have 72 hours to be in compliance with Cowlitz County Code
           to operate a kennel as a dog breeder and pass inspection for the Humane
2          Society to return your dogs.

3   Smith Aff., Ex. 7.  Yaroslaski, however, contends that he "asked Nicholson whether there

4   was any way that he was getting his dogs back and he was told no."  Dkt. 18 at 5.[1]

5          After the officers transported the animals to the Humane Society's building, the

6   staff tagged and checked the health of the dogs.  Officer Nicholson's report provides as

7   follows:

8          After reviewing medical records from staff and reviewing photos of
           all dogs conditions of tight collars embedded in some dogs necks, swollen
9          feet, flea infestation, ear infections, overgrown toenails, dental disease,
           matted coats, skin infections, vaginal infection, coats covered in mud and
10         feces, missing teeth, dehydration, and pregnant and documentation of dogs
           suffering due to the conditions I will be forwarding a full report to the
11         Cowlitz County prosecutors Office to file animal Cruelty Charges 2nd
           Degree State RCW 16.52.207.
12
    Pearce Dec., Ex. J.  Charges were brought and dismissed against Yaroslaski.
13
                                **III. DISCUSSION**
14
           Defendants move for summary judgment on all of Yaroslaski's claims.  In
15
    response, Yaroslaski concedes the dismissal of all but his first and fourth causes of
16
    action.  Dkt. 18 at 1.  In his complaint, Yaroslaski states that his first cause of action is a
17
    civil rights conspiracy in violation of 42 U.S.C. § 1983 and that his fourth cause of action
18
    is violation of his due process rights.  Dkt. 1 at 5–7.  The Court will address the parties'
19
    disputes as to these two claims.
20

21  _____

22         [1] Yaroslaski cited page 48 of his deposition for these facts, but failed to submit that
    specific page in the record.  *See* Yaroslaski Dep.

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The

1   nonmoving party may not merely state that it will discredit the moving party's evidence

2   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

3   *Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

4   nonspecific statements in affidavits are not sufficient, and missing facts will not be

5   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

6   **B.      42 U.S.C. § 1983**

7          Section 1983 is a procedural device for enforcing constitutional provisions and

8   federal statutes; the section does not create or afford substantive rights.  *Crumpton v.*

9   *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  In order to state a claim under section 1983,

10  a plaintiff must demonstrate that (l) the conduct complained of was committed by a

11  person acting under color of state law and that (2) the conduct deprived a person of a

12  right, privilege, or immunity secured by the Constitution or by the laws of the United

13  States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by*

14  *Daniels v. Williams*, 474 U.S. 327 (1986).

15         **1.      Conspiracy**

16         In order to establish a cause of action for conspiracy under section 1983, a plaintiff

17  must show: "(1) the existence of an express or implied agreement among the defendant

18  officers to deprive him of his constitutional rights, and (2) an actual deprivation of those

19  rights resulting from that agreement."  *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010).

20         In this case, Yaroslaski contends that the officers conspired to seize his property

21  without a warrant in violation of the Fourth Amendment.  Dkt. 18 at 6–11.  With regard

22  to the existence of an express or implied agreement, Yaroslaski has submitted evidence to

1     suggest that Defendants met before going to Yaroslaski's property and discussed

2     removing Yaroslaski's dogs from the property.  This evidence shows at the very least an

3     implied agreement to remove Yaroslaski's property without a warrant.  Therefore, the

4     Court concludes that questions of fact exist on this issue.

5           With regard to the second element, the issue is whether entry onto Yaroslaski's

6     property and/or impounding Yaroslaski's dogs was a violation of Yaroslaski's rights.

7     Defendants first contend that there was probable cause to seize the dogs.  Under state

8     law, "a law enforcement officer or animal control officer . . . . may remove an

9     animal . . . without a warrant only if the animal is in an immediate life-threatening

10     condition."  RCW 16.52.085(1).  Moreover, it is a crime to fail "to provide the animal

11     with necessary shelter, rest, sanitation, space, or medical attention and the animal suffers

12     unnecessary or unjustifiable physical pain as a result of the failure . . . ."

13     RCW 16.52.207(2)(a).  Under the County Code, "[a]ny animal that is subjected to any

14     mistreatment described in CCC 6.12.060" is "subject to impoundment . . . ."

15     CCC 6.12.220.  Mistreatment is described, in relevant part, as follows:

16           Cause or allow, either intentionally or negligently, any animal to
    endure pain, suffering or injury; or, to fail to attempt to alleviate pain,

17     suffering or injury he or she so causes to any animal; [or]
          Neglect to provide adequate daily rations of food, water or shelter

18     for any animal he or she owns . . . .

19     CCC 6.12.060 (B)–(C).  Under federal law, probable cause exists "if, under the totality of

20     circumstances known to the arresting officers, a prudent person would have concluded

21     that there was a fair probability that the defendant had committed a crime."  *Beier v. City*

22     *of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004) (internal quotation marks omitted).

1    In light of the relevant law, the Court agrees with Defendants that probable cause

2    existed to believe that Yaroslaski's dogs were being mistreated.  Yaroslaski does not

3    contest the state of the kennels and, in fact, agreed that they were a "mess" because of the

4    foot of snow and freezing weather.  Yaroslaski Dep. at 40.  Officer Nicholson's report

5    provides an additional description of the condition of the animals as follows:

6              After reviewing medical records from staff and reviewing photos of
       all dogs conditions of tight collars embedded in some dogs necks, swollen
7       feet, flea infestation, ear infections, overgrown toenails, dental disease,
       matted coats, skin infections, vaginal infection, coats covered in mud and
8       feces, missing teeth, dehydration, and pregnant and documentation of dogs
       suffering due to the conditions . . . .
9

10   Pearce Dec., Ex. J.  The problem, however, is that only Deputy Robinson is authorized to

11   enforce criminal statutes and the Humane Society does not have such authority.  *See id.*,

12   Ex. A.  On this issue, Defendants argue that "Mr. Yaroslaski has no evidence of Deputy

13   Robinson personally participating in a constitutional violation against Mr. Yaroslaski."

14   Dkt. 16 at 15.  Taking these facts in the light most favorable to Yaroslaski, Deputy

15   Robinson did not authorize impounding Yaroslaski's dogs for a violation of the criminal

16   mistreatment statute.  Therefore, the constitutional question turns on whether the Humane

17   Society Officers were authorized to impound the dogs.

18      With regard to the Humane Society Officers, they are only authorized to impound

19   a dog "without a warrant only if the animal is in an immediate life-threatening

20   condition."  RCW 16.52.085(1).  Taking the facts in the light most favorable to

21   Yaroslaski, the fact that the Humane Society officers waited two days to impound the

22   dogs undermines Defendants' argument on this point.  While the Court finds that there is

ORDER - 9

1    sufficient evidence to show that the animals were mistreated, questions of fact exist on

2    whether all of the impounded animals were in *immediate* life-threatening conditions.

3    Although the Court is inclined to deny Defendants' motions for summary judgment on

4    the issue of a constitutional violation, the Court concludes that oral argument will be of

5    assistance in reaching an ultimate conclusion on this issue.  Therefore, the Court reserves

6    ruling and will schedule a hearing on Defendants' motions.[2]

7           In the alternative, Defendants argue that they are entitled to qualified immunity.

8    This issue turns on "whether it would be clear to a reasonable officer that his conduct was

9    unlawful in the situation he confronted."  *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th

10   Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part on other*

11   *grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)).  Yaroslaski's only argument on

12   this issue is that warrantless seizure law "has been established since at least 1973" and,

13   therefore, qualified immunity does not apply.  Dkt. 18 at 7.  The issue, however, is not

14   the application of some unspecified law from 1973, but whether it would have been clear

15   to a reasonable officer that the seizure of Yaroslaski's dogs was clearly established as

16   unlawful.  On that issue, Yaroslaski fails to provide any law showing that Yaroslaski's

17   right to retain possession of his animals in the conditions he provided was clearly

18   established.  Therefore, the Court also reserves ruling on this issue, which may also be

19   addressed during oral argument.

20

21   _____

22        [2] Under principles of conspiracy, Deputy Robinson need only participate in the
     conspiracy and need not participate in the impounding of the dogs.

1          **2.      Due Process**

2          In evaluating an individual's due process rights, the Court must first evaluate

3   whether the individual has asserted a valid property interest and, if so, what process is

4   due. *See, e.g.*, *Daskalea v. Wash. Humane Soc'y*, 480 F. Supp. 2d 16, 31 (D.D.C. 2007).

5          In this case, the parties do not dispute that Yaroslaski has a valid property right in

6   his dogs, but Yaroslaski does contest whether he was given an adequate post-deprivation

7   remedy.  Dkt. 18 at 7.  Yaroslaski's entire argument is based on (1) his assertion that

8   Officer Nicholson informed him that he could not get his dogs back, and (2) the citation

9   he received only referenced CCC 6.12.220, which does not provide for any post-

10  deprivation hearing.  Dkt. 18 at 7, 12.  In other words, Yaroslaski's argument is based on

11  the fact that he was not properly informed of the post-deprivation procedure and not that

12  one existed.  In fact, the County Code provides for redemption of impounded animals.

13  *See* CCC 6.12.240 (entitled "Redemption").  Even if a government agent's failure to

14  properly inform Yaroslaski of his redemption rights is an error of constitutional

15  magnitude—an issue that Yaroslaski fails to establish—Yaroslaski has also failed to

16  contest Defendants' argument that the officers are entitled to qualified immunity because

17  any error was an unintentional act on behalf of the officers.  As Defendants argue,

18  Yaroslaski "may not choose to disregard available processes and then claim he was not

19  given opportunities."  Dkt. 20 at 9.  Therefore, the Court grants Defendants' motion on

20  Yaroslaski's due process claim.

21

22

1

                                    **IV. ORDER**

2          Therefore, it is hereby **ORDERED** Defendants' motions for summary judgment

3   (Dkts. 15, 16) are **GRANTED in part** as stated herein.  The Court **RESERVES ruling**

4   in part as stated herein.  The Clerk shall terminate Defendants County and the Humane

5   Society.  A hearing on the remaining issues is set for May 26, 2015, at 11:00 AM.

6          Dated this 15th day of May, 2015.

7

8

9                                    _____
                                     BENJAMIN H. SETTLE
                                     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22