1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

9

10

11

12

STEVE YAROSLASKI,

Plaintiff,

v.

COWLITZ COUNTY, et al.,

Defendants.

CASE NO. C14-5181 BHS

ORDER GRANTING IN PART
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

13

14

15

16

17

18

This matter comes before the Court on Defendants Cowlitz County Humane
Society, Kevin Waldo, Mavis Rust, and Mike Nicholson's motion for summary judgment
(Dkt. 15) and Defendants Cowlitz County and Cory Robinson's motion for summary
judgment (Dkt. 16).  The Court has considered the pleadings filed in support of and in
opposition to the motions, oral argument of counsel, and the remainder of the file and
hereby grants the motions in part for the reasons stated herein.

19

**I. PROCEDURAL HISTORY**

20

21

22

On March 3, 2014, Plaintiff Steve Yaroslaski ("Yaroslaski") filed a complaint
against Defendants Cowlitz County ("County"), Cowlitz County Humane Society
("Humane Society"), Kevin Waldo, Mavis Rust, Mike Nicholson ("Humane Society

1    Officers"), and Cory Robinson ("Deputy Robinson") (collectively "Defendants").  Dkt. 1.

2    Yaroslaski asserts numerous causes of action under federal and state law.  *Id.*

3          On March 11, 2015, Defendants filed motions for summary judgment.  Dkts. 15,

4    16.  On April 1, 2015, Yaroslaski responded.  Dkt. 18.  On April 10, 2015, Defendants

5    replied.  Dkts. 20, 21.

6          On May 15, 2015, the Court granted the motions in part, reserved ruling in part,

7    and set a hearing for oral argument.  Dkt. 26.  In relevant part, the Court granted the

8    motions on Yaroslaski's due process claim and reserved ruling on Yaroslaski's civil

9    rights claim.  *Id.*

10                          **II. FACTUAL BACKGROUND**

11         The Humane Society has contracted with Cowlitz County to enforce and

12    administer the animal control laws of Washington State and the County in the

13    unincorporated areas of the County.  Dkt. 15-2, Declaration of Patrick Pearce ("Pearce

14    Dec."), Ex. A.  On March 1, 2011, the Humane Society received a complaint from an

15    individual who expressed concerns about the well-being of at least twenty dogs at

16    Yaroslaski's property that were caged outside in cold conditions.  *Id.*, Ex. J.  Humane

17    Society Officers Nicholson and Waldo responded to the complaint.  *Id.*

18         Upon approaching the house on the property, the officers observed three chain-

19    link kennels on the left side of the house.  The officers contacted Yaroslaski, informed

20    him about the complaint, and asked to look around the property.  The parties dispute

21    whether Yaroslaski consented to a search of the property, but, for the purposes of this

22    motion, the Court will accept Yaroslaski's contention that he asked the officers if they

1  had a warrant to search the property.  Dkt. 19, Affidavit of Derek Smith ("Smith Aff."),

2  Ex. 5, Deposition of Steven Yaroslaski ("Yaroslaski Dep.") at 38 (deposition pagination).

3  Yaroslaski also contends that Officer Nicholson informed Yaroslaski that he didn't need

4  a warrant, and, based on that assertion, Yaroslaski allowed the officers to search the

5  property.  *Id.*

6       What is not in dispute is the condition of the kennels.  In his deposition,

7  Yaroslaski testified as follows:

8          Basically I believe I said that the kennels were a mess.  We had
   snow on the ground, and the waterlines were frozen.  I explained why they
9      were a mess.  I said that I -- because of the weather, I haven't had a chance
   to get them cleaned out right and repaired.  I explained that the roof started
10     leaking with the snow.  We had a foot of snow.  And then the mud started
   coming down, and I explained that to them.
11         They informed me that the kennels are in bad shape.
             And I says, "I know that."
12
   *Id.* at 40.  On this issue, Officer Nicholson's report provides as follows:
13
           During our walk through of Steven's property we counted 42 dogs
14     and puppies.  3 dogs were Stevens that he kept in his house as pets.
           Livestock on the property cows, calves, chickens, and pigs had
15     adequate shelter, food, and all appeared healthy looking.
           The remaining 39 dogs were kept in unsanitary conditions living in
16     mud and feces, along with unkept housing.

17  Pearce Dec., Ex. J.

18       At the conclusion of the walk-through, the officers issued Yaroslaski a citation and

19  a warning.  Officer Nicholson's report provides as follows:

20         At this time I explained to Steven that he would be cited for running
   a kennel operation as a breeder of 10 plus dogs without first obtaining a
21     permit per Cowlitz County Code, and that he was told to do so in 2008
   when officer McCuin visited his property, and that I would be back within
22     one month.

ORDER - 3

*Id.* Yaroslaski testified that Officer Nicholson represented that the officers "would work with me and that I would have a month to get everything in order. He said he'd be back within the month to double-check everything; and that if everything was in order, that they'd work with us and we'd be fine." Yaroslaski Dep. at 40.

On March 2, 2011, Officer Nicholson reviewed the photographs he took at Yaroslaski's property and reviewed relevant county codes and state statutes. Officer Nicholson concluded that Yaroslaski's dogs may have met the definition of "mistreated" under the County Code. Based on that conclusion, he determined that the animals should be impounded and removed from the property.

On March 3, 2011, Officer Nicholson organized an impound operation. Officer Nicholson contacted the Cowlitz County Sheriff to ask for assistance in case Yaroslaski acted violently during the impound. Cowlitz County Sheriff's Deputy Robinson was dispatched to accompany Humane Society Officers Nicholson, Waldo, and Rust. The officers went to the property and informed Yaroslaski that they were there to impound the dogs. Yaroslaski asked the officers if they needed a warrant and that Deputy Robinson informed Yaroslaski that they didn't need a warrant because of the complaints. Yaroslaski Dep. at 46. The Humane Society Officers impounded the dogs and transported them to the Humane Society. Before leaving the property, Officer Nicholson issued Yaroslaski a report of impoundment which provided as follows:

> Your dogs have been impounded per [Cowlitz County Code ("CCC")] 6.12.220 section A. Animal control Authority found reason of any animal that is subject to any mistreatment described in CCC 6.12.060. And failure to register a kennel permit per CCC 6.12.150 and violating

CCC 6.12.144, CCC 6.12.145, and CCC 6.12.146 specific condition to
operate a kennel.
You have 72 hours to be in compliance with Cowlitz County Code
to operate a kennel as a dog breeder and pass inspection for the Humane
Society to return your dogs.

Smith Aff., Ex. 7.  Yaroslaski, however, contends that he "asked Nicholson whether there

was any way that he was getting his dogs back and he was told no."  Dkt. 18 at 5.[1]

After the officers transported the animals to the Humane Society's building, the

staff tagged and checked the health of the dogs.  Officer Nicholson's report provides as

follows:

After reviewing medical records from staff and reviewing photos of
all dogs conditions of tight collars embedded in some dogs necks, swollen
feet, flea infestation, ear infections, overgrown toenails, dental disease,
matted coats, skin infections, vaginal infection, coats covered in mud and
feces, missing teeth, dehydration, and pregnant and documentation of dogs
suffering due to the conditions I will be forwarding a full report to the
Cowlitz County prosecutors Office to file animal Cruelty Charges 2nd
Degree State RCW 16.52.207.

Pearce Dec., Ex. J.  Charges were brought and dismissed against Yaroslaski.

## III. DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party

---

[1] Yaroslaski cited page 48 of his deposition for these facts, but failed to submit that
specific page in the record.  *See* Yaroslaski Dep.

1    fails to make a sufficient showing on an essential element of a claim in the case on which

2    the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

3    323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

4    could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

5    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

6    present specific, significant probative evidence, not simply "some metaphysical doubt");

7    *see also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if

8    there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

9    jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

10   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

11   626, 630 (9th Cir. 1987).

12         The determination of the existence of a material fact is often a close question.  The

13   Court must consider the substantive evidentiary burden that the nonmoving party must

14   meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

15   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

16   issues of controversy in favor of the nonmoving party only when the facts specifically

17   attested by that party contradict facts specifically attested by the moving party.  The

18   nonmoving party may not merely state that it will discredit the moving party's evidence

19   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

20   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

21   nonspecific statements in affidavits are not sufficient, and missing facts will not be

22   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.     42 U.S.C. § 1983**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights.  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  In order to state a claim under section 1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  In order to establish a cause of action for conspiracy under section 1983, a plaintiff must show: "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010).

In this case, Yaroslaski contends that the officers conspired to seize his property without a warrant in violation of the Fourth Amendment.  Dkt. 18 at 6–11.  With regard to the existence of an express or implied agreement, Yaroslaski has submitted evidence to suggest that Defendants met before going to Yaroslaski's property and discussed removing Yaroslaski's dogs from the property.  This evidence shows at the very least an implied agreement to remove Yaroslaski's property without a warrant.  Therefore, the Court concludes that questions of fact exist on this issue.

With regard to the second element, the issue is whether entry onto Yaroslaski's property and impounding Yaroslaski's dogs was a violation of Yaroslaski's rights.  At

1   this point, the Court is relying solely on Yaroslaski's brief for the underlying factual basis

2   for his Fourth Amendment claim.  This is very important for the analysis because

3   Yaroslaski only cites facts regarding the day of impoundment, the second trip to his

4   property.  Dkt. 18 at 6–7 ("Factual Basis of Claim One").  On that day, the officers had

5   evidence that not only were the dogs in plain view in the front of Yaroslaski's property

6   being mistreated, but also that dogs in other areas of the property were also being

7   mistreated.  As such, Yaroslaski's claim is limited to the seizure of the dogs based on the

8   evidence within the officers' possession on March 1, 2011.

9       Defendants first contend that there was probable cause to seize the dogs.  Probable

10  cause, however, is only relevant if the police officer was ordering the seizure of the dogs

11  based on a possible criminal law violation.  While this matter would have been easily

12  resolved if this was the only factual scenario before the Court, there are facts that, when

13  taken in the light most favorable to Yaroslaski, show that the police officer accompanied

14  the Humane Society Officers for the sole purpose of protection in case Yaroslaski

15  became violent during the seizure.  In other words, the police officer was not ordering the

16  seizure of the dogs under his powers to enforce criminal laws.  Therefore, the existence

17  of probable cause does not resolve the factual scenario in which the Humane Society

18  Officers impounded the dogs.

19      Absent police powers, the Humane Society Officers rely on the local ordinances to

20  justify their actions.  Specifically, the Cowlitz County Code ("CCC") states that

21  mistreated animals are subject to impoundment.  CCC 6.12.220(A)(2).  Mistreatment

22  includes causing or allowing, "either intentionally or negligently, any animal to endure

1  pain, suffering or injury; or, to fail to attempt to alleviate pain, suffering or injury he or

2  she so causes to any animal" and neglecting "to provide adequate daily rations of food,

3  water or shelter for any animal he or she owns."  CCC 6.12.060(B)–(C).  While there

4  may exist questions of fact whether the animals were in immediate life threatening

5  conditions, it is undisputed that the animals were at least being mistreated as defined in

6  the CCC.  Therefore, the Court concludes that the Humane Society Officers were entitled

7  to impound the animals pursuant to the CCC.

8        Yaroslaski, however, argues that, regardless of the local ordinances, the officers

9  violated his constitutional rights.  The Court need not address this issue because "[w]hen

10  a city council enacts an ordinance, officers are entitled to assume that the ordinance is a

11  valid and constitutional exercise of authority."  *Acosta v. City of Costa Mesa*, 718 F.3d

12  800, 823-24 (9th Cir. 2013).  Moreover, "[i]f an officer reasonably relies on the council's

13  duly enacted ordinance, then that officer is entitled to qualified immunity."  *Id*. at 824.

14  Under this precedent, the Humane Society Officers reasonably relied on the CCC and are

15  entitled to qualified immunity.  Yaroslaski cites no authority to the contrary and fails to

16  meet his burden on this issue.  *See Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010) *cert.*

17  *denied*, 131 S. Ct. 2991 (2011) ("Although qualified immunity is an affirmative defense,

18  once raised, it becomes the plaintiff's burden to defeat it.").  Therefore, the Court grants

19  Defendants' motion based on qualified immunity.

20

21

22

1

**IV. ORDER**

2

Therefore, it is hereby **ORDERED** Defendants' motions for summary judgment

3

(Dkts. 15, 16) are **GRANTED in part** as stated herein.

4

The Clerk shall close this case and enter judgment for Defendants.

5

Dated this 21st day of July, 2015.

6

7

_____

8

BENJAMIN H. SETTLE
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22